OPINION
{¶ 1} Plaintiff-appellants, Gavin Markowitz, Daniel Markowitz, and Lenore France, appeal the decision of the Portage County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Bainbridge Equestrian Center, Inc., Karen Brown, Jack Brown, and Lana Volk. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} The Bainbridge Equestrian Center is a corporation that boards and trains horses and provides equestrian lessons. Karen Brown is the owner of the center. Lana Volk was the center's manager and in charge of providing instruction.
 {¶ 3} Gavin Markowitz is the son of Daniel Markowitz and Lenore France. In the summer of 2003, France enrolled Gavin, then age seven, in the Bainbridge Equestrian Center's "Summer Fun Horse Camp" to receive instruction in English style equestrian riding. In order to enroll Gavin in the program, Lenore was required to sign an Equine Activity Liability Release. This document identified as "inherent risk[s] of equine activity," the "propensity of an equine to behave in ways that may result in injury" and "the unpredictability of an equine's reaction to sounds, sudden movement, unfamiliar objects, persons, or other animals." The release provided, in relevant part, as follows: "I freely assume all risks and hazards that may occur as a result of being an equine activity participant."
 {¶ 4} Gavin was enrolled in a week-long program at the Bainbridge Equestrian Center, beginning August 4, 2003. Children of different abilities participated in the camp. At France's request and in Volk's estimation of Gavin's abilities, Gavin was identified as a "beginner rider." According to Volk, during the first two days of the camp the children were shown how to post, to put the heels down, to hold the reins, to steer, stop and go, and how to dismount in an emergency.
 {¶ 5} On Wednesday, August 6, 2003, the children engaged in a "trial ride." The trial ride was a half-hour ride through a mowed meadow next to the camp. The meadow was an open area with the grass cut to a height of less than a foot. Half the children on the trial ride would be mounted and the other half would be on foot. At *Page 3 
the mid-point of the ride, the children would change places. The trial ride was conducted by camp counselors, young women having experience with horses. During the ride, Volk remained in the camp giving individual instruction to the more advanced students.
 {¶ 6} Gavin was paired with a pony named Bradley and was hand-led by a counselor named Stephanie Gormley, then age twenty. Bradley had been brought to the camp the previous day, on loan from friends of Volk. Before bringing Bradley to Bainbridge Equestrian Center, Volk had ridden Bradley on several occasions and in different situations. Volk has also observed Bradley ridden by a six-year-old girl. After bringing Bradley to the Center, Volk "lead him around the grounds" showed him the areas she thought the pony might find "spooky."
 {¶ 7} During the ride, Bradley reared up and Gavin fell from the pony. Bradley then stepped on Gavin, breaking several ribs and tearing Gavin's liver. Gavin testified by affidavit as follows regarding the incident: "While on the trial ride I heard a sound, thunder I think, and Bradley bolted and ran." The only other witness to the incident to testify was Emily LaSpina, then age seven and a camp participant. LaSpina testified the pony reared "because thunder struck." Gavin was life-flighted to Metro Hospital and has since recovered from his injuries.
 {¶ 8} On August 3, 2004, appellants filed suit based on the appellees' "willful and wanton disregard" for Gavin's safety, including "matching an inexperienced rider with an inadequately tested horse, by inadequately assessing physical compatibility, and by providing to staff and participants inadequate training and policies." Appellants sought compensation for Gavin's injuries and for loss of consortium. *Page 4 
 {¶ 9} On June 1, 2005, appellees moved for summary judgment.
 {¶ 10} Appellants responded on August 9, 2005. Attached to appellants' response was the affidavit of Brenda Hendrix, co-founder of the American Association for Horsemanship Safety and a certified instructor with the Horsemanship Safety Association. Hendrix testified that human error was "the root cause of why the pony was caused to rear." Specifically, Hendrix testified that appellees demonstrated a "willful or wanton" disregard for Gavin's safety by "1) not being educated in how to properly test and `break in' a pony, 2) not thoroughly informing parents and students of the nature of horses, 3) not explaining what the release form says and why it says what it does, and 4) not properly matching pony and rider."
 {¶ 11} On January 26, 2006, the trial court granted summary judgment in favor of appellees based on Ohio's Equine Activity Immunity Statute, R.C. 2305.321. The trial court also upheld the validity of the release signed by France, rejecting appellants' arguments that the release was unconscionable and that the release was not effective as to Gavin's claims. This appeal timely follows.
 {¶ 12} On appeal, appellants raise the following assignments of error:
 {¶ 13} "[1.] The trial court erred by granting summary judgment based on statutory immunity under O.R.C. 2305.321
 {¶ 14} "[2.] The trial court erred by granting summary judgment to Appellees based on the "release" executed by Gavin's mother."
 {¶ 15} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears *Page 5 
from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision.Brown v. Cty. Commrs. of Scioto Cty. (1993), 87 Ohio App.3d 704, 711
(citation omitted).
 {¶ 16} Under the first assignment of error, appellants argue the appellees are not entitled to immunity under R.C. 2305.321, which provides, in relevant part: "an equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person is not liable in damages in a tort or other civil action for harm that an equine activity participant allegedly sustains during an equine activity and that results from an inherent risk of an equine activity." R.C. 2305.321(B) (1 ).
 {¶ 17} There is no dispute that, for the purposes of this statute, Bainbridge Equestrian Center is an "equine activity sponsor" as defined in R.C. 2305.321(A)(4); Brown and Volk are "equine activity sponsors" and "equine professionals" as defined in R.C. 2305.321(A)(4) and (5) respectively; a horse camp and trail ride are "equine activities" as defined in R.C. 2305.321(A)(2); Gavin was an "equine activity participant" as defined in R.C. 2305.321(A)(3); and Bradley is an "equine" as defined in R.C. 2305.321(A)(1). *Page 6 
 {¶ 18} Appellants dispute that the harm Gavin sustained was the result of "an inherent risk of an equine activity." The statute defines "inherent risk of an equine activity," in relevant part, as follows: "a danger or condition that is an integral part of an equine activity, including, * * * [t]he propensity of an equine to behave in ways that may result in injury, death, or loss to persons on or around the equine" and "[t]he unpredictability of an equine's reaction to sounds, sudden movement, unfamiliar objects, persons, or other animals." R.C.2305.321(A)(7)(a) and (b).
 {¶ 19} In the present case, the uncontradicted evidence is that Gavin was thrown from Bradley when the pony reacted to a sudden clap of thunder. The trial court found "this unfortunate accident is precisely the kind of activity which the statute meant to immunize." We agree.
 {¶ 20} Appellants, relying on the expert testimony of Brenda Hendrix, maintain it was "human activity" that proximately caused Gavin's injuries, specifically the "the placing of an admitted known beginner at horseback riding, and of very tender years, on a pony that was brand new to the horse camp, unfamiliar with the surroundings, and untested in any meaningful way by any standard applied by those in the business who organize and operate horse camps." Assuming all these allegations to be true, appellants have failed to demonstrate how this "human activity" caused Gavin's injuries. The essential unpredictability of an equine's reaction to sound is attested by Hendrix' affidavit, which concedes that "horses may act unpredictably regardless of how much training they have, how old they are or how `quiet' or `bombproof they are" when confronted "with a new or scary situation or new/changed environment." It was for this reason that the Ohio Legislature immunized equine *Page 7 
professionals and equine activity sponsors from harm caused by the essential unpredictability of equines to sounds, sudden movements, and unfamiliar situations.
 {¶ 21} Moreover, Hendrix' opinion that "human activity" proximately caused Gavin's injuries is belied by her deposition testimony, wherein she testified "we don't know [why Bradley bucked] because we weren't there. We don't know if he just hopped or he tripped or he spooked or if there was thunder or he stepped on a stick. Who knows?" The only competent evidence in the record is that Bradley reacted to a clap of thunder. Appellants cannot disregard this evidence and speculate that human activity is responsible for Gavin's injuries while admitting that the precise cause of the accident is unknown.
 {¶ 22} Appellants, in effect, attempt to circumvent the immunity attaching to the "inherent risks of equine activity" by suggesting that, if Bradley had been more familiar with the grounds, he would not have reacted unpredictably to the sound of thunder. To accept this reasoning would be to contradict the clear purpose of the statute. For example, in the case of Allison v. Johnson (June 1, 2001 ), 11th Dist. No. 2000-T-0116, 2001 Ohio App. LEXIS 2485, appellant was injured when a horse began "to jump and shuffle backwards" while led back to his stall by the appellee. Id. at *2. In Allison, it could be argued that "human activity" caused the injury, as the appellee "negligently failed to properly restrain the horse." Id. at *3. This court rejected that argument, stating that "the retrieval of a loose horse from the arena area to the stall area * * * would seem to be exactly what was contemplated when the legislature spoke of the `unpredictability' which accompanies equine activity." Id. at *11-*12. The fact that human negligence may have allowed the horse to become *Page 8 
loose or failed to control the horse did not negate the immunity afforded by the statute.
 {¶ 23} Appellants herein also argue that liability exists under certain exceptions to the immunity attaching to equine activity. "The immunity from tort or other civil liability * * * is forfeited if * * * [a]n equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person provides an equine to an equine activity participant and fails to make reasonable and prudent efforts to determine the equine activity participant's ability to safely engage in the equine activity or to safely manage the equine based on the equine activity participant's representations of the participant's ability, the equine activity participant fails to safely engage in the equine activity or to safely manage the equine, and that failure proximately causes the harm involved." R.C. 2305.321(B)(2)(b).
 {¶ 24} Appellants argue Gavin was "mismatched" with Bradley. "[B]y placing a beginner with little training on an `untested' pony placed in an unfamiliar and improperly controlled setting," Bradley's reaction to the thunder "was foreseeable." Again, appellants' argument is contradicted by their own expert, who testified that "horses may act unpredictably regardless of how much training they have." Likewise, there is a failure to demonstrate how the alleged mismatching of Gavin and Bradley proximately caused the pony to buck at the sound of thunder. Bradley may have been unfamiliar with the grounds, but the grounds were an open field of "smooth grass," in LaSpina's words, which rose just "a little" above the seven-year-old's ankles. Apart from the claim that Bradley was not adequately tested, there is no *Page 9 
evidence suggesting that Bradley was, in fact, an unsuitable match given Gavin's abilities.
 {¶ 25} Finally, equine immunity is forfeited where "[a]n act or omission * * * constitutes a willful or wanton disregard for the safety of an equine activity participant and proximately causes the harm involved." R.C. 2305.321(B)(2)(d). We agree with the trial court that, construing the evidence most strongly in appellants' favor, there is no evidence tending to support this exception to immunity. "[Appellees] tested the suitability of the horse, trained Gavin, and provided safety equipment and a person to the lead the horse by its bridle. Nothing in the evidence even hints of willful or wanton conduct or reckless indifference on the part of [appellees]." At best, appellants have raised an issue whether appellees were negligent in acclimating Bradley to his new environment. Cf. Bailey v. Brown (1973), 34 Ohio St.2d 62, paragraphs one and two of the syllabus ("`[w]ilful misconduct' * * * implies an intention or purpose to do wrong, an intentional deviation from a clear duty or from a definite rule of conduct, and not a mere error of judgment"; `[w]anton misconduct' is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury") (citations omitted).
 {¶ 26} Appellants' first assignment of error is without merit.
 {¶ 27} Under their second assignment of error, appellants argue the trial court erred by upholding the release of liability signed by France. *Page 10 
 {¶ 28} The equine immunity statute provides that "an equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person is not liable in damages in a tort or other civil action for harm that an equine activity participant allegedly sustains during an equine activity and that results from an inherent risk of an equine activity if that equine activity participant or a parent, guardian, custodian, or other legal representative of that equine activity participant voluntarily executes, prior to the occurrence of the harm involved, a written waiver as described in division (C)(2) of this section." R.C. 2305.321(C)(1). Division (C)(2) provides "[a] valid waiver * * * shall be in writing and subscribed by the equine activity participant or the parent, guardian, custodian, or other legal representative of the equine activity participant, and shall specify at least each inherent risk of an equine activity that is listed in divisions (A)(7)(a) to (e) of this section and that will be a subject of the waiver of tort or other civil liability." R.C. 2305.321(C)(2)(a).
 {¶ 29} The trial court concluded that the Equine Activity Liability Release signed by France complied with the statutory requirements and, accordingly, released Bainbridge Equestrian Center from liability for injuries "suffered or incurred while participating in any equine activity," in the words of the release. We agree. The release identifies the inherent risks of an equine activity in language tracking the statutory provisions of R.C. 2305.321(A)(7)(a) to (e) and provides "I freely assume all risks and hazards that may occur as a result of being an equine activity participant."[1] *Page 11 
 {¶ 30} Appellants raise several arguments why the release should not be enforced. Appellants claim the release is a contract of adhesion. It is well-recognized, however, that, in considering such releases "in the context of recreational activity, while such waivers may be contracts of adhesion, in that they are presented on a `take-it-or-leave-it' basis, they are not unconscionable, but `are of a sort commonly used in recreational settings' and `are generally held to be valid'."Courbat v. Dahana Ranch, Inc. (Haw. 2006), 141 P.3d 427, 439 (citations omitted); Berlangieri v. Running Elk Corp. (N.M. 2003), 76 P.3d 1098,1113 ("[although the release that was offered to Berlangieri was a printed form and there was no bargaining involved, Berlangieri was not forced to enter the contract to participate in a recreational enterprise [horseback riding]").
 {¶ 31} Appellants claim France's execution of the release was neither informed nor voluntary. Hendrix opined appellees failed to thoroughly inform France "of the nature of horses" and did not "explain what the release form says." However, the release states, in capital letters, that "I have read this entire equine activity liability release. The contents and meaning are clearly understood by me." Moreover, the release specifically identified the inherent risks of equine activity as provided in the statute.
 {¶ 32} Appellants also claim that the subject of the release is "I," i.e. Lenore France, rather than Gavin and, therefore, should not apply to Gavin. The term "I," however, is not defined within the release. In her deposition, France testified that she understood the release to mean that Gavin could be injured by a horse and that she was told, by Brown, that she would have to sign the release in order for Gavin to *Page 12 
participate in the horse camp. Finally, we note, as did the trial court, that R.C. 2305.321 expressly provides that a parent may sign the release on behalf of the equine activity participant.
 {¶ 33} The second assignment of error is without merit.
 {¶ 34} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, granting summary judgment in favor of appellees, Bainbridge Equestrian Center, Karen and Jack Brown, and Lana Volk, is affirmed.
[1] Appellants also object to language in the release that purports "to indemnify * * * all persons associated with Bainbridge Equestrian Center against any and all losses * * * which may be presented or initiated * * * to recover money * * * for any injuries * * * suffered or incurred while participating in any equine activity." In the present situation, where Bainbridge Equestrian Center has been found to enjoy statutory immunity, this indemnification clause is not operative and need not be considered by this court.
CYNTHIA WESTCOTT RICE, P.J., concurs,
COLLEEN MARY OTOOLE, J., dissents with a Dissenting Opinion.